UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER NAILING,<br><br>           Plaintiff,<br><br>    v.<br><br>K. BIGONI, et al.,<br><br>           Defendants. | Case No. 1:20-cv-00668-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART<br><br>(ECF No. 39)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.   INTRODUCTION

Xavier Nailing ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case is proceeding on Plaintiff's Fourteenth Amendment claim against defendant Bigoni, who Plaintiff alleges falsely imprisoned Plaintiff beyond his sentence. (ECF No. 1, p. 3; ECF No. 9).[1] This case is also proceeding on Plaintiff's Fourteenth Amendment claim against defendant Moua, who Plaintiff alleges wrongly revoked Plaintiff's Milestone Completion Credit. (Id.).

On October 27, 2021, Defendants filed a motion for summary judgment, arguing that they are entitled to summary judgment on both claims. (ECF Nos. 39 & 41). On January 4, 2022, Plaintiff filed his opposition. (ECF No. 45). On January 11, 2022, Defendants filed their

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

reply. (ECF No. 46).

Based on the following, the Court will recommend that Defendants' motion be granted in part. The Court finds that it is undisputed that defendant Bigoni strictly complied with a valid court order when completing the worksheet used to calculate Plaintiff's earliest possible release date, and he is thus entitled to absolute immunity. Accordingly, the Court will recommend that Defendants' motion for summary judgment be granted as to defendant Bigoni.

The Court also finds that Plaintiff had a liberty interest in the Milestone Completion Credit he was already awarded, that this was clearly established prior to the incident alleged in the complaint, that there is a dispute of fact regarding whether Plaintiff was provided with due process before the credit was rescinded, and that there is a dispute of fact regarding whether defendant Moua was acting according to a formal policy. Accordingly, the Court will recommend that Defendants' motion for summary judgment be denied as to defendant Moua.

## II.    SUMMARY OF CLAIMS

This case is proceeding on Plaintiff's Fourteenth Amendment claim against defendant Bigoni, who Plaintiff alleges falsely imprisoned Plaintiff for ninety-nine days beyond his sentence. (ECF No. 1, p. 3; ECF No. 9). This case is also proceeding on Plaintiff's Fourteenth due process claim against defendant Moua, who Plaintiff alleges wrongly revoked Plaintiff's Milestone Completion Credit. (Id.).

As to defendant Bigoni, Plaintiff alleges that he was only given 226 days of custody credit, when he should have been given 325 days.[2] Plaintiff brought this matter to defendant Bigoni's attention via a grievance, but he refused to award Plaintiff an additional sixty-four days of custody credit or reinstate the thirty-five days that were removed. This caused Plaintiff to be imprisoned longer than his sentence.

As to defendant Moua, on September 22, 2017, Plaintiff was in prison and received a Milestone Completion Credit of twenty-eight days. Plaintiff's release date was changed from August 19, 2018, to July 22, 2018. However, defendant Moua rescinded the credit without

---

[2] In his opposition to Defendants' motion for summary judgment, Plaintiff argues that he was entitled to 337 days of credit. (ECF No. 45, p. 3).

notice. Plaintiff believes this was part of a scheme by prison officials and the California Department of Corrections and Rehabilitation.

### III.  SUMMARY JUDGMENT

####   a.  Defendants' Motion

Defendants filed a motion for summary judgment on October 27, 2021. (ECF No. 39).

Defendants provide the following facts relevant to Plaintiff's claim against defendant Bigoni, which they argue are undisputed:

> On November 17, 2016, Plaintiff was convicted of robbery, a serious and violent felony, and was placed on probation with 261 days of presentence credit, in Los Angeles Superior Court case number BA-441591-01. On July 10, 2017, Plaintiff was found to have violated his probation, his probation was revoked, and the court sentenced him to two years in state prison, with 226 days of presentence credits awarded.
>
> On February 22, 2018, Plaintiff filed a petition for writ of habeas corpus with the superior court, contending that he was awarded 261 days of credit when he was sentenced in 2016, but only received 226 days of presentence credit when his probation was revoked and he was sentenced to prison in 2017, and the Los Angeles District Attorney's Office conceded that Nailing was entitled to twenty additional days of presentencing credits, totaling 246 days of presentencing credit and making his release date July 30, 2018. On July 12, 2018, after the district attorney conceded that Plaintiff was entitled to 246 days and should be released on July 30, 2018, Plaintiff refused the court's appointment of a lawyer and moved to be released on July 30, 2018, alleging that he would be over-detained if he was not released by that date. On July 17, 2018, Plaintiff submitted an "emergency" inmate grievance at ASP in which he requested to be released by July 30, 2018.
>
> Also on July 17, 2018, the superior court issued an order, which was served upon the records department at ASP, indicating that the court interpreted Plaintiff's motion for release as accepting the district attorney's concession that he was entitled to 246 days of credits, and ordering that Plaintiff be awarded twenty additional days of presentencing credit and be released by July 30, 2018. Upon receiving the Court's July 17, 2018, order, Defendant Bigoni completed an updated custody credit calculation worksheet, applying the additional twenty days of credit awarded by the court for a total of 246 days of presentencing credit, determined that Plaintiff's EPRD should be August 3, 2018, and immediately provided this updated calculation worksheet to the court. Defendant Bigoni correctly calculated Plaintiff's release date as August 3, 2018, based upon the court's order awarding Plaintiff 246 days of presentencing credits. Plaintiff never informed Defendant Bigoni that he contested the 246 days of presentencing credits awarded by the court. On July 18, 2018, the court

issued an amended order acknowledging receipt of Bigoni's updated calculation worksheet, confirming that Bigoni's calculations were correct, and ordering that Plaintiff be released by August 3, 2018, which was served upon the records department at ASP. Plaintiff was released from the custody of CDCR on August 3, 2018, in compliance with the Court's order.

(ECF No. 39-2, pgs. 7-8) (citations omitted)

Defendants argue that defendant Bigoni is entitled to summary judgment because the undisputed evidence shows that he relied on a facially valid court order, and Plaintiff's release date was correctly calculated based on that order. (Id. at 6). As defendant Bigoni executed a facially valid court order, he is entitled to absolute immunity from Plaintiff's claims. (Id.).

Defendants also argue that Plaintiff was given an opportunity to be heard on the issue at both his sentencing hearing and during the course of his habeas case. (Id. at 12). Thus, Plaintiff's claim fails under a due process theory. (Id.). As to an Eighth Amendment theory, Defendants argue that Plaintiff's claim against defendant Bigoni fails because the dispute stems from the amount of presentencing credits Plaintiff was awarded by the criminal court, not from any action or inaction of defendant Bigoni. (Id. at 13).

As to defendant Moua, Defendants argue that the relevant Milestone Completion Credit of twenty-eight days is only available to inmates who complete a math course and testing, and who did not have a high school diploma or general equivalency degree. (Id. at 8). Pursuant to CDCR policy, if there is an issue regarding an inmate's eligibility for the credit, the credit is rescinded until eligibility can be verified through transcripts. (Id. at 9). If eligibility is verified, the credit is reinstated. (Id.).

According to Defendants, Plaintiff received the relevant credit on September 22, 2017, and it was rescinded on January 29, 2018, because defendant Moua reviewed documents from Plaintiff's central file which indicated that Plaintiff was a high school graduate. (Id.). Plaintiff's transcripts were requested, but Plaintiff was released before Avenal State Prison received them. (Id.).

Defendants argue that defendant Moua is entitled to summary judgment because Plaintiff does not have a liberty interest in the Milestone Completion Credit. (Id. at 16). Thus, "Plaintiff's claim that he never received notice of the rescission is immaterial for purposes of

1  summary judgment because he had no protected liberty interest in the credit." (Id.). Moreover,
2  the undisputed evidence shows that defendant Moua properly rescinded Plaintiff's Milestone
3  Completion Credit due to the fact that there was information in Plaintiff's central file showing
4  that Plaintiff was not eligible for it. (Id. at 16-17). Finally, Defendants argue defendant Moua
5  is entitled to qualified immunity because "the Ninth Circuit has not yet held whether there is a
6  state-created liberty interest in an MCC [and] the United States Supreme Court has explicitly
7  held that there is no federal constitutional liberty interest. Thus, it would not have been clear to
8  every reasonable official that rescinding the MCC would violate Plaintiff's rights." (Id. at 19).
9  Defendants also argue that defendant Moua is entitled to qualified immunity "because
10 Defendant Moua's actions were dictated by statute and CDCR policy, and were objectively
11 reasonable." (Id. at 20).

In support of their motion, Defendants submit among other things: the declaration of defendant Bigoni; the declaration of defendant Moua; a court order issued by the Superior Court of the State of California for the County of Los Angeles, directing that the Clerk issue an amended abstract of judgement reflecting 246 days of presentencing custody credit and ordering Plaintiff released by July 30, 2018; a calculation worksheet completed by defendant Bigoni indicating that Plaintiff's release date should be August 3, 2018; an amended order issued by the Superior Court of the State of California for the County of Los Angeles, indicating that the release date should be August 3, 2018, and not July 30, 2018, as previously indicated; excerpts from Plaintiff's deposition transcript; and documents indicating that Plaintiff graduated from high school.

      b. Plaintiff's Opposition

Plaintiff filed his opposition on January 4, 2022. (ECF No. 45).

Plaintiff argues that Defendants caused him to be over-incarcerated and are not entitled to qualified immunity. (Id. at 2).

Plaintiff argues that, after being arrested on May 8, 2017, he served 64 days in Los Angeles County jail. (Id.). Moreover, he should have been given an increase of 20% good time credits, for a total credit of 67 days. (Id.). If you add this to the 261 days of custody credit

5

he received on August 17, 2016, the total is 337 days.  (Id. at 3).  This presentencing credit cannot be removed.  (Id.).

Plaintiff argues that the judge made a mistake and Defendants knew it, yet did nothing when Plaintiff pointed it out to them.  (Id.).  Had defendant Bigoni applied all of Plaintiff's presentencing credit, Plaintiff estimates that his release date would have been April 8, 2018.  According to Plaintiff, Defendants admit in their answer that Plaintiff did not receive all of his presentencing credit.  (Id.).

As to his claim against defendant Moua, Plaintiff argues that there is nothing in Title 15 or in CDCR policy that states that a test coordinator can remove a credit.[3]  (Id. at 4).  Additionally, defendant Moua never informed Plaintiff that he was rescinding Plaintiff's credit.  (Id.).  Finally, defendant Moua knew that Plaintiff did not graduate high school, because this is indicated on multiple different documents.  (Id.).

Plaintiff also argues that because California Code of Regulations Title 15, section 3375(a), says that "[t]he classification process shall be uniformly applied," the lower court did not have jurisdiction to apply a credit after a judicial error and after 90 days.  (Id.).  The only ones that did have jurisdiction to apply credits are Defendants.  (Id.).

In support of his opposition, Plaintiff submits among other things: A Felony Sentencing Memorandum from November of 2016 indicating that Plaintiff was entitled to 261 days of custody credit; a grievance Plaintiff filed asking for an additional 35 days of credits because he was only credited for 226 days instead of 261 days; defendant Bigoni's responses to Plaintiff's First Request for Interrogatories; defendant Moua's responses to Plaintiff's First Request for Interrogatories; and documents indicating that Plaintiff did not graduate high school.

IV.   DISCUSSION

    a.  Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[3] At the relevant time, defendant Moua was employed as a testing coordinator.  (ECF No. 39-6, p. 1, ¶ 1).

6

P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he

7

evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

      b. Plaintiff's Fourteenth Amendment Claim Against Defendant Bigoni

         i. *Legal Standards*

"A prisoner's [claim] for damages for excessive custody can be a legitimate § 1983 claim." Haygood v. Younger, 769 F.2d 1350, 1359 (9th Cir. 1985). "Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest; otherwise, such detention can be held to be unconstitutional only if it violates due process." Id. at 1354 (citation and internal quotation marks omitted).

"False imprisonment or deprivation of liberty is not per se unconstitutional merely because the defendant is a state official. Similarly, the Fourteenth Amendment does not guarantee state prisoners a particular method of calculating prison sentences. But when the state itself creates a statutory right to release from prison, the state also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated. Therefore, if the officials made their calculations in a manner which denied [Plaintiff] his statutory right to liberty without due process of law, a constitutional violation exists and a cause of action is available under § 1983." Id. at 1355 (footnote and citations omitted).

However, "prison officials charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders." Engebretson v. Mahoney, 724 F.3d 1034, 1039 (9th Cir. 2013). "Prison officials who simply enforce facially valid court orders are performing functions necessary to the judicial process. They must not be required to second-guess the courts if that process is to work fairly and efficiently." Id. at 1042 (citation and internal quotation marks omitted).

         ii. *Analysis*

The Court first addresses defendant Bigoni's argument that he is entitled to immunity because he relied on a facially valid court order in calculating Plaintiff's release date. Plaintiff does not dispute that the sentencing court issued orders, including the order that Plaintiff was

8

entitled to 246 days of presentencing custody credit and the order setting Plaintiff's release date on August 3, 2018, and that Plaintiff was released on that court-ordered date. Plaintiff spends much of his opposition arguing that his presentencing credit was miscalculated. However, defendant Bigoni is entitled to immunity to the extent he followed the sentencing court's order.

Plaintiff disputes that the judicial release order was valid, and argues that because California Code of Regulations Title 15, section 3375(a), says that "[t]he classification process shall be uniformly applied," the sentencing court did not have jurisdiction to apply a credit after a judicial error and after ninety days. (ECF No. 45, p. 4). "The only ones that Did have jurisdiction to apply credit are the defendant." (Id.) (errors in original). However, Plaintiff is incorrect as a matter of law. Nothing in California Code of Regulations Title 15, section 3375(a) suggests that defendant Bigoni, a case records analyst (ECF No. 39-4, p. 1, ¶ 1), had authority to overrule a judge's determination regarding calculation of presentencing credits. Under California law, "[i]t is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section." Cal. Penal Code § 2900.5(d). See also Cal. Code Regs., tit. 15 § 3043.1 ("Credit applied prior to sentencing is awarded by the sentencing court pursuant to sections 2900.1, 2900.5, 2933.1, and 4019 of the Penal Code."). And here, it is undisputed that a court ordered 246 days of presentencing custody credit. (ECF No. 39-4, pgs. 12 & 24).

The Ninth Circuit has held "that prison officials charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders." Engebretson, 724 F.3d at 1039. See also Chavez v. Robinson, 12 F.4th 978, 996 (9th Cir. 2021) ("[G]overnment officials may be immune from liability where they act in reliance on a valid court order."). However, this immunity is limited: "the prison official in question must act within his or her authority and strictly comply with the order." (Id. at 1041).

The question is thus whether defendant Bigoni strictly complied with a facially valid court order, and the Court finds that the undisputed facts show that he did. It is undisputed that defendant Bigoni filled out a calculation worksheet regarding Plaintiff's earliest possible

release date (ECF No. 39-4, pgs. 16-18), and that the sentencing court relied on this worksheet when calculating Plaintiff's release date (Id. at 23). And, defendant Bigoni submits evidence that when he filled out the calculation worksheet he used the amount of presentencing credits listed by the sentencing court (246 days), thus complying with the court order.[4] Plaintiff does not challenge any of the other calculations in the worksheet. Additionally, Plaintiff does not submit any evidence suggesting that defendant Bigoni failed to comply with the court order in any way; any evidence suggesting that the court order was facially invalid; any evidence that defendant Bigoni's calculations, which relied on the court order, were incorrect; or any evidence that defendant Bigoni caused Plaintiff to be held in prison longer than the duration called for by the sentencing court. It is also undisputed that Plaintiff was released on August 3, 2018, as ordered by the sentencing court.

As it is undisputed that defendant Bigoni strictly complied with a facially valid court order when completing the calculation worksheet, and that Plaintiff was released on his court-ordered release date, the Court finds that defendant Bigoni is entitled to absolute immunity.[5]

    c. Plaintiff's Fourteenth Amendment Claim Against Defendant Moua

        i. *Legal Standards*

The Due Process Clause of the Fourteenth Amendment protects prisoners from being

---

[4] As evidence, Defendants submit defendant Bigoni's declaration, in which he states that he relied on the court's order when he calculated the earliest possible release date for Plaintiff. (ECF No. 39-4, pgs. 2-4). Defendants also submit a copy of the updated worksheet, which lists the 246 days of presentencing credit awarded by the sentencing court. (Id. at 16).

[5] This immunity does not apply to requests for declaratory relief. Moore v. Urquhart, 899 F.3d 1094, 1104 (9th Cir. 2018). However, the Court will recommend that Plaintiff's request for declaratory relief be dismissed as moot. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). In determining whether a request for declaratory relief has become moot, the Supreme Court has held that, "basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." Preiser v. Newkirk, 422 U.S. 395, 402 (emphasis in original) (citation and internal quotation marks omitted). Here, Plaintiff was released from prison before he filed this suit (ECF No. 1, p. 1), and there is nothing in the record suggesting that this issue may arise again. As Plaintiff is not in prison and there is no reasonable expectation that the wrong will be repeated, Plaintiff's request for declaratory relief is moot. See, e.g., Stinson v. Galaza, 73 F. App'x 312, 314 (9th Cir. 2003) (finding that the district court properly dismissed a claim for declaratory relief where an inmate was transferred to a different institution, thus mooting the inmate's claim against his former prison); Barrales v. Crump, 2015 WL 880939, at *2 (C.D. Cal. Feb. 27, 2015) (same).

deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.  Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'"  Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

      ii.  *Analysis*

The Court next addresses defendant Moua's argument that he is entitled to qualified immunity on Plaintiff's claim that defendant Moua rescinded Plaintiff's Milestone Completion Credit incorrectly and without due process, resulting in Plaintiff being incarcerated for an extra twenty-eight days.  Defendants argue that Plaintiff does not have a clearly established liberty interest in a Milestone Completion Credit and thus any deprivation of process does not state a constitutional violation or gives rise to qualified immunity.  Specifically, defendant Moua argues that because "the Ninth Circuit has not yet held whether there is a state-created liberty interest in an MCC [and] the United States Supreme Court has explicitly held that there is no federal constitutional liberty interest.  Thus, it would not have been clear to every reasonable official that rescinding the MCC would violate Plaintiff's rights."  (ECF No. 39, p. 19).

After reviewing the applicable law, the Court finds that Plaintiff has a liberty interest in the Milestone Completion Credit, and that this was clearly established before January 29, 2018, which is when the credit was rescinded. In 1974, the Supreme Court held that:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing 'in every conceivable case of government impairment of private interest.' *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

Wolff, 418 U.S. at 557.

While called a Milestone Completion Credit instead of a good time credit, there is no evidence or legal argument before the Court suggesting that this distinction is relevant. California created the Milestone Completion Credit, as well as a schedule that identifies the approved Milestone Completion programs and the corresponding credit reduction for successful completion of each program. Cal. Code Regs. tit. 15, § 3043.3(d).[6] Moreover, once earned, the credit can only be forfeited for serious misbehavior. Cal. Code Regs. tit. 15, § 3043.3(g) ("Milestone Completion Credit shall be forfeited in whole-day increments upon a finding of guilt of a serious rule violation in accordance with section 3323, only after all Good Conduct Credit is exhausted."). Accordingly, "the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is

---

[6] The Court notes that Cal. Code Regs. tit. 15, § 3043.3 has been amended, and cites to the version in effect in 2017, which is when Plaintiff was awarded the credit.

1  not arbitrarily abrogated." Wolff, 418 U.S. at 557. See also Robison v. CDCR, 2018 WL
2  6329661, at *3 (E.D. Cal. Dec. 4, 2018) ("[T]he Supreme Court has held that prisoners have a
3  liberty interest in good behavior time credits earned pursuant to state statutes and
4  procedures…."); In re Fratus, 204 Cal. App. 4th 1339 (2012) (finding that an inmate had a right
5  to procedural due process where the inmate lost good time credits); In re Rothwell, 164 Cal.
6  App. 4th 160 (2008) (same); Vickers v. Hill, 2016 WL 7014388, at *2 (E.D. Cal. Nov. 30,
7  2016) ("A state-created liberty interest exists where the restraint 'inevitably affect[s] the
8  duration' of a prisoner's sentence….") (first alteration in original) (quoting Sandin v. Connor,
9  515 U.S. 472, 484, 487 (1995)), report and recommendation adopted, Case No. 2:14-cv-01425,
10 ECF No. 27 (E.D. Cal. Mar. 27, 2017), subsequently aff'd sub nom. Vickers v. Rackley, 772 F.
11 App'x 577 (9th Cir. 2019).

12      Moreover, the cases Defendants cite, Edwards v. Swarthout, 597 F. App'x 914 (9th Cir.
13 2014) and Ainsworth v. Spearman, 2019 WL 1923188 (E.D. Cal. Apr. 30, 2019), are not on
14 point. The issue in Edwards, an unpublished Ninth Circuit case, was whether an inmate "had a
15 liberty interest in the accrual of good time credits earned through [California Penal Code] §
16 2933," id. at 915, and Ainsworth involved an inmate who wanted his credit applied to his youth
17 offender parole eligibility date instead of his controlling offense parole eligibility date, 2019
18 WL 1923188, at *2. Neither case involved revocation of a credit already awarded or lack of
19 due process in doing so, and thus neither case is on point. Moreover, as cited above, numerous
20 courts have found that an inmate does have the right to procedural due process where the
21 inmate lost good time credits.

22      Accordingly, the Court finds that Plaintiff has a liberty interest in the credit he was
23 already awarded, and that this was clearly established at the time of defendant Moua's actions
24 in this case.

25      Finally, Defendants argue that "when the state of law is undeveloped, officials are
26 entitled to qualified immunity when relying on the formal policies of their agencies." (ECF
27 No. 39-2, p. 19). First, this argument fails because, as discussed above, the state of the law is
28 not undeveloped, and the right was clearly established at the time of defendant Moua's actions

in this case. Second, there is a genuine dispute of material fact regarding whether defendant Moua acted according to a formal policy. As discussed above, the relevant section of Title 15 only allowed the credit to be rescinded "upon a finding of guilt of a serious rule violation in accordance with section 3323." Cal. Code Regs. tit. 15, § 3043.3(g). Additionally, in response to an interrogatory asking defendant Moua to identify which section of Title 15 allowed him to rescind the credit, which was awarded by a different individual, defendant Moua stated that he "has not located any section in [Title 15] that specifically addresses rescinding Milestone Completion Credit awarded by test coordinators at a different institution." (ECF No. 45, p. 95).

Moreover, Defendants have not submitted competent evidence that defendant Moua was acting according to a formal policy. According to Defendants' statement of undisputed facts, "[w]hen there was a question as to an inmate's eligibility for the Math CASAS Benchmark 7 MCC, CDCR policy and procedure required that the credit be rescinded until the inmate's educational level and status could be verified through their educational transcripts…." (ECF No. 39-3, p. 5).

In support of this fact, Defendants cite to paragraphs five and six of defendant Moua's declaration. In paragraph five, defendant Moua refers to California Code of Regulations, Title 15, § 3043.3(b), "which indicated that such credits 'shall not be awarded to inmates already possessing a high school diploma, high school equivalency approved by the California Department of Education, or college degree.'" (ECF No. 39-6, p. 2). In paragraph six, defendant Moua states that "[w]hen there was a question as to an individual inmate's eligibility for this milestone completion credit, CDCR policy required that the credit be rescinded until the inmate's education level and status could be verified through their educational transcripts. If it could be verified that the inmate had not graduated high school, the credit would be re-awarded." (Id.).

Notably, while defendant Moua provides a source of authority regarding eligibility for the credit, no source of authority is provided for the alleged policy regarding recission of the credit. Defendant Moua does not provide a copy of the policy, does not quote to the policy, and does not cite to the policy. Nor does he provide facts regarding the policy, such as who

created the policy and when the policy went into effect.  All that defendant Moua alleges is that a policy existed and that the policy told him to do exactly what he did.  This conclusory, self-serving affidavit is insufficient for the Court to conclude that it is undisputed that defendant Moua was acting according to policy.  F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Defendants also provide no evidence that due process was provided prior to the credit being rescinded.  There is no evidence that Plaintiff was notified of the rescission or reason prior to the deprivation, that Plaintiff was provided an opportunity to object prior to the deprivation, or that that a hearing was provided prior to the deprivation.[7]

In sum, the Court finds that Plaintiff had a liberty interest in the credit he was already awarded, that this was clearly established prior to January 29, 2018, that at the very least there is a dispute of fact regarding whether Plaintiff was provided with due process before the credit was rescinded, and that there is a dispute of fact regarding whether defendant Moua was acting according to a formal policy.

Accordingly, the Court will recommend that Defendants' motion for summary judgment be denied as to defendant Moua on the claim for violation of due process.

## V. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the Court will recommend that Defendants' motion for summary judgment be granted as to defendant Bigoni and denied as to defendant Moua.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 39) be granted in part;
2. Judgment be entered in favor of defendant Bigoni; and
3. Defendants' motion for summary judgment be denied as to defendant Moua.

---

[7] At this time the Court need not determine what procedures were required to satisfy due process because there is no evidence that Plaintiff was provided with any process before his Milestone Completion Credit was rescinded and Defendants do not argue that there was a sufficient post-deprivation remedy.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 9, 2022**          /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE